**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ABBY MOREHOUSE and TREYSHAWN HOSKINS, individually and on behalf of all others similarly situated,**<br><br>*Plaintiffs*,<br><br>**v.**<br><br>**THE UNIVERSITY OF THE ARTS,**<br><br>*Defendant.* | Case No.: 2:24-cv-4164<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Abby Morehouse and TreyShawn Hoskins, (collectively, "Plaintiffs") bring this Class Action Complaint ("Complaint") against Defendant, The University of the Arts ("Defendant" or "University") individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      The University of the Arts is a private arts university in Philadelphia, Pennsylvania that is comprised of two colleges and two divisions: the College of Art, Media & Design; the College of Performing Arts; the Division of Liberal Arts; and the Division of Continuing Studies.

2.      On or about May 31, 2024, University President, Kerry Walk, publicly announced the school had exhausted all its funds and would be permanently closing.

3.      On June 1, 2024, the University's Board of Directors unanimously voted to approve the school's closure.

4.      On June 7, 2024, the University was closed, and the Middle States Commission on Higher Education withdrew the University's accreditation.

5.      Plaintiffs were students at the University when announcement of the school's closure was made.  Unfortunately, the University did not provide students with a plan to continue their education prior to announcing the closure. As a result of the abrupt notice and closure, Plaintiffs have lost educational, housing, and other opportunities.

6.      Plaintiffs bring this suit against The University of the Arts, on behalf of themselves and all other similarly situated students, to recover tuition, fees, and other damages incurred as a result of the University's actions.

## PARTIES

7.      Plaintiff Abby Morehouse is a citizen of the Commonwealth of Pennsylvania. At all relevant times, Plaintiff Morehouse has been a resident of Maple Glen, Montgomery County, Pennsylvania.

8.      Plaintiff TreyShawn Hoskins is a citizen of the Commonwealth of Pennsylvania. At all relevant times, Plaintiff Hoskins has been a resident of Philadelphia, Philadelphia County, Pennsylvania.

9.      Defendant, The University of the Arts, is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 320 South Broad Street, Philadelphia, Pennsylvania 19102. Defendant enrolled students from across the country, with approximately 66% of its students enrolling from outside of the Commonwealth of Pennsylvania.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§1332(d), as modified by the Class Action Fairness Act of 2005, because this is a class action wherein the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, is a citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendant because it is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania, Defendant operated a private arts university in this District, and its campus is located within this District.

12.     Venue is proper under 28 U.S.C §1391(b) because Defendant resides in this District, operated a private arts university in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

13.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

14.     Defendant is a private arts university in Philadelphia, Pennsylvania that provides a rigorous art, design and writing education. The University is "home to 22 undergraduate areas of study that produce leaders and award-winners across every discipline each year in schools of Art, Dance, Design, Film, Music and Theater."[1]

15.     The University is "one of the only regionally accredited institutions in the U.S. that is solely dedicated to the visual, performing and communication arts."[2]

---

[1] https://web.archive.org/web/20240628171704/https://www.uarts.edu/programs (captured on June 28, 2024).
[2] *Id.*

16.     Beginning in the late 2010s and early 2020s, University enrollment started to decline, and the University developed a poor financial outlook. Enrollment numbers dropped from 1,914 students during the 2018–2019 academic year to 1,149 students by the start of the Fall 2023 semester. For fiscal year 2023, the University had a projected operating loss of $2.56 million, on a budget of about $50 million.[3]

17.     On or about May 31, 2024, University President, Kerry Walk, announced the school had exhausted all its funds and would be permanently closing on June 7, 2024.  President Walk stated, "[u]nfortunately, however, we could not overcome the ultimate challenge we faced: with a cash position that has steadily weakened, we could not cover significant, unanticipated expenses . . . . The situation came to light very suddenly. Despite swift action, we were unable to bridge the necessary gaps."[4]

18.     On June 1, 2024, the University's Board of Directors unanimously voted to approve the school's closure. Subsequently, the Middle States Commission on Higher Education withdrew the University's accreditation.[5]

19.     Unfortunately, the University failed to inform the Middle States Commission on Higher Education, its accrediting agency, of the closure in a timely manner or plan for proper closure, including a teach-out plan to make sure students' education could continue.[6]

20.     At all times material hereto, the University represented it would be open and available to provide educational services during the 2024-2025 academic year. Undergraduate

---

[3] https://www.msn.com/en-us/news/us/the-university-of-the-arts-is-closing-june-7-its-president-says/ar-BB1nq1DJ (last accessed August 13, 2024).
[4] *Id.*
[5] https://studentaid.gov/announcements-events/closed-school/university-of-the-arts (last accessed July 8, 2024).
[6] https://www.msn.com/en-us/news/us/the-university-of-the-arts-is-closing-june-7-its-president-says/ar-BB1nq1DJ (last accessed August 13, 2024).

students seeking to begin Fall 2024 were encouraged to complete their Free Application for Federal Student Aid (FAFSA®) forms by March 15, 2024.[7]  Tuition for the 2024-2025 academic year was $55,630.00, and the Student Services Fee was $290.00.[8] Additionally, students residing in on-campus housing were required to pay a $200.00 nonrefundable, housing reservation deposit and a $200.00 security deposit for the 2024-2025 academic year.[9]

21.    Plaintiffs herein relied on the University's continuing accreditation and operation when choosing to pursue their respective degrees. Had Plaintiffs known the University would be closing and/or losing its accreditation, they would not have enrolled.

22.    Plaintiff Abby Morehouse enrolled as an undergraduate student at the University during the Fall of 2021. Plaintiff Morehouse was pursuing a Bachelor of Fine Arts degree in Musical Theatre and was expected to graduate May 2025. Plaintiff Morehouse lived in campus housing and had planned to live on campus for the remainder of this year and for the 2024-2025 academic year.

23.    Plaintiff Morehouse has lost valuable opportunities as a result of the University's actions and the school's closure.  Specifically, Plaintiff Morehouse has lost employment and campus housing for the Summer 2024 semester and the 2024-2025 academic year.  The details are as follows:

> a) In May 2024, Plaintiff Morehouse worked as an Office Assistant in the Office of Resident Life. The Office Assistant position paid $8/hour and included on-campus housing for the summer.

---

[7] https://web.archive.org/web/20240710110051/https://www.uarts.edu/finaid/undergrad/deadlines (captured on July 10, 2024).
[8] https://web.archive.org/web/20240628180704/https://www.uarts.edu/finaid/undergrad/costs#anchor-tab-2 (captured on June 28, 2024).
[9] *Id.*

b) Plaintiff Morehouse was approved to be a Resident Assistant ("RA") for the 2024-2025 academic year. The RA position included free on-campus housing and a free meal plan.

24.     The University's room rates for the 2024-2025 academic year are as follows:

| Type of Room | Cost | Residence Halls |
|---|---|---|
| Shared bedroom | $12,900/year | Furness, Juniper & Spruce Hall |
| Private bedroom in a shared apartment | $13,780/year | Furness & Spruce Hall |
| Single studio apartment | $14,479/year | Spruce Hall |

25.     The University's meal plan rates for the 2024-2025 academic year are as follows:

a) **Platinum Meal Plan**: $7,080.00 Dining Dollars per year

b) **Gold Meal Plan**: $6,130.00 Dining Dollars per year.[10]

26.     Plaintiff Morehouse has also lost educational opportunities that she valued. More specifically, she lost the opportunity to develop her theater-making skills in the Directing, Playwriting and Production ("DPP") program at the University. The DPP program is one of the only undergraduate programs in the U.S. that combines directing, playwriting, stage management and producing in one major.

27.     The DPP program would have allowed Plaintiff Morehouse the opportunity to work on at least eight different productions, whether as stage manager, assistant director, dramaturg, assistant choreographer, or otherwise. Plaintiff Morehouse lost the opportunity to have her work produced in an annual new play festival that brings together student producers, playwrights, performers, directors, stage managers and designers for a collaborative production—without the assistance of faculty.

---

[10] https://web.archive.org/web/20240711022627/https://www.uarts.edu/life-at-uarts/housing/room-rates-2023-2024 (captured on July 11, 2024).

28.    Plaintiff Morehouse also lost the opportunity to participate in the Polyphone Festival of New and Emerging Musicals, which was a nationally recognized festival at the University.  The Polyphone Festival gave creators of new musicals time and space to develop their shows free from the pressures of commercial interests, producing theaters, or reviews, while giving students on-the-ground training in new musical theater development.[11]

29.    Plaintiff Morehouse has spent considerable time, money, and effort to transfer to another school, procure housing, and complete other related activities necessary to continue her education for the 2024-2025 academic year.

30.    Plaintiff TreyShawn Hoskins enrolled as an undergraduate student at the University during the Fall of 2022. Plaintiff Hoskins was pursuing a Bachelor of Fine Arts degree in Dance and was expected to graduate Spring 2026.

31.    Plaintiff Hoskins has lost valuable opportunities as a result of the University's actions and the school's closure. The University was named one of the Best College Dance Programs in the US for 2022–2023 by DanceUS.[12]

32.    Plaintiff Hoskins initially chose the University because the school had the most training between the different disciplines of the schools he auditioned with.  Plaintiff Hoskins also enjoyed the diversity and styles of dance he was able to explore while attending the University (offerings such as ballet, traditional modern dance techniques, hip-hop, jazz, and contemporary forms).

33.    Since the University failed to provide its students with an adequate transition plan, Plaintiff Hoskins' expected graduation has been delayed to 2027 or 2028.  The University's failure

---

[11] https://www.polyphone.org/about (last accessed August 13, 2024).
[12] https://web.archive.org/web/20240801160601/https://www.uarts.edu/academics/undergraduate/dance-bfa (captured on August 1, 2024).

to provide adequate notice of its closure (or proper guidance thereafter), has affected Plaintiff Hoskins' ability to find a suitable transfer school.

34.    In addition to the various mandatory and non-refundable fees paid to Defendant, Plaintiff Hoskins has spent $500.00 in application fees for other schools since the University announced its permanent closure.

35.    The Defendant's abrupt notice and closure has created uncertainty about Plaintiffs' academic futures, forced them to navigate the transition without substantive guidance, caused them to find alternate living arrangements, and subjected them to unexpected expenses to continue their education.

## CLASS ACTION ALLEGATIONS

36.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

37.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provision of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Nationwide Class**:
All people in the United States enrolled at or accepted to The University of the Arts for the Summer 2024 semester and/or the 2024-2025 academic year who paid fees and/or non-refundable deposits to attend the university (the, "**Nationwide Class**").

**The Application Fees Subclass**:
All students enrolled at The University of the Arts for the Summer 2024 semester and/or the 2024-2025 academic year who paid application fees for admission into other schools after The University of the Arts permanently closed (the, "**Application Fees Subclass**").

**The Fees & Deposits Subclass**:
All people in the United States enrolled at or accepted to The University of the Arts for the Summer 2024 semester and/or the 2024-2025 academic year who paid fees and/or non-refundable deposits to attend the university (the, "**Deposits Subclass**").

38.     Collectively, the Nationwide Class, Application Fees Subclass, and Deposits Subclass are referred to as the "Classes" or "Class Members."

39.     Excluded from the Classes is the Defendant, and any of its respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definitions as appropriate during the course of this litigation.

40.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rules of Civil Procedure 23.

42.     <u>Numerosity</u>: The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved noticed dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

43.     <u>Commonality and Predominance</u>: This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

        a)  Whether Defendant engaged in the conduct alleged herein;

b) Whether Defendant breached its contracts with Plaintiffs and other members of the Classes;

c) Whether Defendant has been unjustly enriched by retaining tuition and fees for classes and programs Defendant no longer offers;

d) Whether Defendant breached its contracts with Plaintiffs and Class Members by retaining fees without providing the services, benefits and/or programs the fees were intended to cover;

e) Whether certification of any or all of the Classes proposed herein is appropriate under Fed. R. Civ. P. 23;

f) Whether members of the Classes are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

g) The amount and nature of relief to be awarded to Plaintiff and the members of the Classes.

44.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of other members of the Classes because, among other things, all members of the Classes were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

45.    <u>Adequacy</u>: Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of other members of the Classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex litigation, and Plaintiffs intend to prosecute the action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

46.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the

10

adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large entities, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

47.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

48.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

49.    The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

50.    Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude litigating it as a class action.

51.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

52.     To the extent that any described Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

53.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to members of the Classes as a whole.

## CAUSES OF ACTION
### (*On behalf of Plaintiffs and the Classes*)

### COUNT 1: BREACH OF CONTRACT

54.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

55.     Plaintiffs and Class Members selected Defendant to continue their education because Defendant was one of the only regionally accredited institutions in the U.S. that was solely dedicated to the visual, performing and communication arts. Defendant has produced leaders and award-winners across every discipline each year in schools of Art, Dance, Design, Film, Music and Theater.

56.     Plaintiffs and the other members of the Classes entered into contracts with Defendant which provided that Plaintiffs and Class Members would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

57.     The rights and privileges of students are set forth by Defendant through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications. These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

58.     Included among the rights and privileges of being a student at the University was the requirement for Defendant to follow applicable state regulations, remain accredited, provide reasonable notice to its students of an imminent school closure, and to properly develop a transition plan in the event of a permanent school closure.

59.     Defendant's website, recruitment brochures, and other circulars, bulletins, and publications are the primary means through which Defendant targets students and attempts to influence such students to apply for enrollment.

60.     Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to May 31, 2024, that even referenced the possibility of the University closing on June 7, 2024.

61.     The Defendant offered to provide, and Plaintiffs and Class Members expected to receive, instruction for the 2023-2024 and 2024-2025 academic years.

62.     Upon information and belief, most students were provided with financial aid applications, housing applications, student employment applications, deadlines for completing various applications, syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

63.     Plaintiffs and Class Members fulfilled their end of the bargain when they paid tuition and fees, either by paying out of pocket, by using student loan financing, or otherwise.

64.     The University breached its contract with Plaintiffs and Class Members when the University abruptly closed the school on June 7, 2024, and no longer offered the educational programs, opportunities, and experiences the Plaintiffs and Class Members paid for.

65.     Defendant further breached the contract when it failed to provide its students, including Plaintiffs and Class Members, with reasonable notice of its imminent closure, failed to maintain its accreditation, and failed to provide a teach-out plan to make sure students' education could continue.

66.     Plaintiffs and Class Members have suffered damage as a direct and proximate result of Defendant's breach. Plaintiffs and Class Members are now forced to expend considerable time, effort, and money to find alternative educational arrangements.

67.     Plaintiffs and Class Members are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

68.     This cause of action does not seek to allege "academic malpractice."

## COUNT 2: BREACH OF IMPLIED CONTRACT

69.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Defendant offers one of the only regionally accredited institutions in the U.S. that was solely dedicated to the visual, performing and communication arts. Defendant offers 22 undergraduate areas of study and has produced leaders and award-winners across every discipline each year in schools of Art, Dance, Design, Film, Music and Theater.

71.     Plaintiffs and Class Members entered contracts with Defendant when they enrolled in the University. The obligations and intentions of the parties to this suit were not specifically

expressed but can be inferred from the surrounding circumstances and customary business practices.

72.     Based on customary business practices in the student-university relationship, Plaintiffs and Class Members had a valid expectation that, in exchange for the payment of tuition and fees, Defendant would: (i) provide an art, design and writing education; (ii) maintain its accreditation; (iii) comply with all applicable laws; (iv) provide students with reasonable notice of its imminent closure; (v) provide a transition plan to make sure students could continue their education in the event of a permanent school closure; and (vi) refund advance payments of tuition and fees following a permanent school closure.

73.     Also implied in the student-university contractual relationship was a duty to exercise good-faith in the provision of a rigorous art, design and writing education.

74.     Plaintiffs and Class Members would not have enrolled at the University in the absence of the expressed or implied promises. Defendant's obligations were material to Plaintiffs' and the Class members' decisions to enroll in the University because a reasonable person would have considered them to be important in deciding whether to enroll.

75.     Plaintiffs and Class Members fully and adequately performed their obligations under the implied contract with Defendant by paying the required tuition and fees to attend.

76.     Defendant breached the implied contract with Plaintiffs and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements, all of which created a reasonable expectation that the Defendant would: (i) provide an art, design and writing education; (ii) maintain its accreditation; (iii) comply with all applicable laws; (iv) provide students with reasonable notice of its imminent closure; (v) provide a transition plan to make sure students could

15

continue their education in the event of a permanent school closure; and (vi) refund advance payments of tuition and fees following a permanent school closure.

77.     However, Defendant breached the contract with Plaintiffs and Class Members by permanently closing the school, constructively evicting students from campus, closing campus buildings and facilities, and cancelling most student activities.

78.     Defendant further breached the implied contract with Plaintiffs and Class Members by failing to provide its students with reasonable notice of its imminent closure, failing to maintain its accreditation, failing to provide a teach-out plan to make sure students' education could continue, and failing to return unearned tuition and fees.

79.     Plaintiffs and Class Members have suffered damage as a direct and proximate result of Defendant's breach. Plaintiffs and Class Members are now forced to expend considerable time, effort, and money to find alternative educational arrangements.

80.     Plaintiffs and Class Members are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

81.     This cause of action does not seek to allege "academic malpractice."

## COUNT 3: UNJUST ENRICHMENT

82.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.     Plaintiffs brings this Count in the alternative to the breach of implied contract count above.

84.     By paying tuition and fees for the 2023-2024 and 2024-2025 academic years, Plaintiffs and Class Members conferred a monetary benefit on Defendant. Defendant knew that

Plaintiffs and Class Members conferred a benefit upon it and Defendant has accepted and retained that benefit.

85.     Defendant failed to: (i) provide an art, design and writing education beyond June 7, 2024; (ii) maintain its accreditation; (iii) comply with all applicable laws; (iv) provide students with reasonable notice of its imminent closure; (v) provide a transition plan to make sure students could continue their education in the event of a permanent school closure; and (vi) refund advance payments of tuition and fees following a permanent school closure. Therefore, it would be unjust for Defendant to retain any of the benefits that Plaintiffs and Class Members conferred upon Defendant without paying value in return.

86.     Plaintiffs and Class Members have suffered damage as a direct and proximate result of Defendant's conduct. Plaintiffs and Class Members are now forced to expend considerable time, effort, and money to find alternative educational arrangements.

87.     Plaintiffs and Class Members are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

88.     This cause of action does not seek to allege "academic malpractice."

### COUNT 4: FRAUDULENT CONCEALMENT

89.     Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

90.     Defendant provides undergraduate and graduate degrees in art, dance, design, film, music and theater. Plaintiffs and Class Members paid tuition and other required fees to obtain a degree from one of the only regionally accredited institutions in the U.S. that is solely dedicated to the visual, performing and communication arts.

91.     Plaintiffs and Class Members have been enrolled at the University since, at least, the 2023-2024 academic year and were scheduled to begin classes for the 2024-2025 academic year.

92.     Defendant omitted key facts concerning the University's financial viability, continued accreditation status, and its ability to provide educational opportunities during the Plaintiffs' and Class Members' application and/or enrollment process (*e.g.,* submitting applications, collecting academic records, taking standardized tests, applying for financial aid, taking campus tours, submitting deposits, or registering for classes).

93.     For fiscal year 2023, the University had a projected operating loss of $2.56 million, on a budget of about $50 million.[13] University President, Kerry Walk, acknowledged the school had a financial position that had "steadily weakened" and that the school was unable to "cover significant, unanticipated expenses." [14] Thus, Defendant knew, or reasonably should have known before the start of the 2023-2024 academic year, that it was financially unstable and would no longer be able to offer undergraduate or graduate degrees beyond June 2024.

94.     Despite the clear financial issues the University was facing, it disregarded its students' best interests and represented it would be open and available to provide educational services during the 2024-2025 academic year, and set deadlines for financial aid applications, the payment of deposits, and other activities consistent with enrollment.

95.     Due to the university-student special relationship, and its superior knowledge concerning the long-term viability of the school, Defendant had a duty to disclose the possibility that the University would permanently close before the 2024-2025 academic year.

---

[13] https://www.msn.com/en-us/news/us/the-university-of-the-arts-is-closing-june-7-its-president-says/ar-BB1nq1DJ (last accessed August 13, 2024).
[14] *Id.*

96.     Furthermore, Defendant had a duty to disclose because these facts would be material to current and prospective students; because the Defendant actively concealed or understated them; because the Defendant intended for students to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts.

97.     Despite the school closure being foreseeable, Defendant failed to give reasonable notice students, including Plaintiffs and Class Members. Defendant intended that Plaintiffs and Class Members on its omissions and misrepresentations when applying to or enrolling at the University.

98.     Defendant willfully and knowingly omitted material information regarding the University's financial condition, its accreditation status, and its inability to provide educational opportunities beyond June 2024.  Defendant countenanced these material omissions to boost or maintain its enrollment numbers, which had been steadily declining since the late 2010s, and to create a false assurance that continued attendance would move students closer to obtaining their respective degrees.

99.     Defendant knew, or should have known, the omitted information and partial representations were material to students, including Plaintiffs and Class Members, because the financial viability and accreditation of the University plays a significant role in determining which school a student chooses to attend.

100.    Defendant's failure to disclose the potential school closure induced the Plaintiffs and Class Members to attend or remain enrolled at the University.  Plaintiffs and Class Members reasonably relied on Defendant's representations and omissions because they had no way of knowing that Defendant's omissions and representations were false or misleading.

101.   Defendant knowingly, willingly, or negligently concealed or omitted information about its financial status, its impending closure, and options for students to transfer to other schools following its closure.

102.   Defendant's omissions and representations directly injured Plaintiffs and Class Members, who spent considerable time, money, and effort during the application and/or enrollment process (*e.g.,* submitting applications, collecting academic records, taking standardized tests, applying for financial aid, taking campus tours, submitting deposits, or registering for classes) and are now forced to spend additional time, money, and effort procuring alternative arrangements. Furthermore, Plaintiffs and Class Members have lost valuable opportunities as a result of the University's actions and the school's closure.

103.   Had Plaintiffs and Class Members known the truth of the matter, they would not have enrolled at the University, paid deposits and fees, or turned down other opportunities to further their educational interests.

104.   Plaintiffs and Class Members are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

105.   This cause of action does not seek to allege "academic malpractice."

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment as follows:

A.   For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and counsel for Plaintiffs as Class Counsel;

B.      For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C.      For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G.      For injunctive relief as pleaded or as the Court may deem proper;

H.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

I.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: August 13, 2024                Respectfully submitted,

                                        */s/ Gary F. Lynch*
                                        Gary F. Lynch (PA 56887)
                                        **LYNCH CARPENTER, LLP**
                                        1133 Penn Avenue, 5th Floor
                                        Pittsburgh, PA 15222
                                        Tel: (412) 322-9243
                                        Email: gary@lcllp.com

                                              -AND-

                                        */s/ Paul J. Doolittle*
                                        Paul J. Doolittle, Esq.*
                                        **POULIN | WILLEY | ANASTOPOULO, LLC**
                                        32 Ann Street Charleston, SC 29403
                                        Tel: (803) 222-2222
                                        Email: pauldoolittle@poulinwilley.com
                                                  cmad@poulinwilley.com

                                        *Attorneys for Plaintiffs and Proposed Class*
                                        *Pro hac vice forthcoming*